## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

_____

|  |  |  |
|---|---|---|
| ALEXANDER TORRES | ) | |
| dba STANCE DOWN LOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-00468 |
| | ) | |
| SO ILL APPAREL AND DECALS LLC, | ) | |
| SHANE SEAMAN, and ERIC VASILAKOS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

_____


## COMPLAINT

**NOW COMES** Plaintiff Alexander Torres dba Stance Down Low ("Plaintiff"), by and through his attorneys at Saper Law Offices, LLC, and hereby files this Complaint against Defendants So Ill Apparel and Decals, LLC ("Defendant So Ill"), Shane Seaman ("Defendant Seaman"), and Eric Vasilakos ("Defendant Vasilakos") (together, "Defendants"). In support thereof, Plaintiff states as follows:


### INTRODUCTION

1.      This is an action to obtain relief for Defendants' breach of the Illinois Uniform Partnership Act (805 ILCS 206 *et seq*.), breach of fiduciary duty, conversion, trademark infringement, unfair competition and passing off under the Lanham Act (15 U.S.C. § 1125), false registration under the Lanham Act (15 U.S.C. § 1120), violation of the Uniform Deceptive Trade

Practices Act (815 ILCS § 510), Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505), and unfair competition under the common law.

2.      This action results from, *inter alia*, Defendants' unauthorized and intentional use and registration of a trademark that is identical to Plaintiff's STANCE DOWN LOW mark and logo, Defendants' willfully deceptive and fraudulent business practices, and Defendants' breach of Plaintiff's and Defendant So Ill's joint venture agreement.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b), and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue and personal jurisdiction are proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) and 15 U.S.C. § 1221 because, *inter alia*, a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendants have promoted their services online and offline in this district. Furthermore, Defendant So Ill is an LLC registered in the state of Illinois and Defendants Seaman and Vasilakos both reside in this district.

## PARTIES

5.      Plaintiff Torres is an individual who resides in Hampshire, Illinois.

6.      Upon information and belief Defendant So Ill Apparel and Decals, LLC is an Illinois limited liability company with a principal office located at 1045 Bent Tree CT Elgin, Illinois 60120.

7.     Upon information and belief Defendant Seaman is an individual who resides in Elgin, Illinois.

8.     Upon information and belief Defendant Vasilakos is an individual who resides in Elgin, Illinois.


# FACTS

*Plaintiff and his Stance Down Low brand and marks*

9.     Plaintiff is an individual with years of experience promoting and organizing events for car enthusiasts across the Midwest. Since as early as 2011, Plaintiff has used the STANCE DOWN LOW and STANCE DOWN LOW WHERE'S YOUR STANCE marks (the "Stance Marks") for, *inter alia*, providing information in the field of auto mobiles and for organizing community festivals featuring car shows and music since 2013.

10.     In 2012, Plaintiff filed and was a granted a business certificate for his dba "Stance Down Low," and has since then exclusively held itself as and promoted its services under the "Stance Down Low" name. *See* Exhibit 1.

11.     In 2013 Plaintiff launched his website https://www.stancedownlow.com/ (the "Website") which prominently displayed the Stance Marks, provided information for car enthusiasts, provided media for entertainment, and contained a store selling various accessories, vehicle stickers, and decals. *See* Exhibit 2.

12.     In 2013, Plaintiff hosted and organized his first event for car enthusiasts under the Stance Down Low brand and mark. This event also served as a fundraiser for charitable causes.

13.     Since then, Plaintiff has gone on to host and organize over a hundred events tailored to car enthusiasts and has established a high degree of expertise and knowledge in the

areas of promoting events for car enthusiasts, ensuring these events attain all the necessary government approvals and licenses, and ensuring all other matters of organization are properly handled for such events to run smoothly and safely.

14.     Furthermore, and because of Plaintiff's widespread, continuous, and exclusive use of the Stance Marks to identify Plaintiff's products and services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the Stance Marks. Plaintiff's Stance Marks are distinctive to both the consuming public and within Plaintiff's trade.

*The Founding and Operation of the Parking Garage Party Joint Venture.*

15.     Sometime near September 2014, and because of Plaintiff's prior success, Plaintiff came in contact with Defendant Seaman and the two discussed various matters such as merchandising and Defendant Seaman's interest in Plaintiff's events and desire to create events for car enthusiasts with Plaintiff. On information and belief, at the time Defendant Seaman was an owner of Defendant So Ill. Defendant So Ill sold custom hoodies, t-shirts, tank tops, socks, and custom-colored decals.

16.     That year Plaintiff participated in several of Defendant So Ill's events as a vendor.

17.     On February 25, 2015, Plaintiff was in process of attaining a permit for a new event for car enthusiasts and inquired whether Defendants would be interested in partnering for the event. *See* Exhibit 3.

18.     All throughout 2015, the parties remained in communication regarding the possibility of a joint venture and discussed financial matters relating to the operation of the joint venture such as the costs of government approvals and insurance.

Page 4

19.     On January 27, 2016, Plaintiff and Defendant Seaman and Defendant Vasilakos formally met in person to discuss their mutual interest in creating premiere events for car enthusiasts throughout the Midwest. Based on the parties' prior experiences with organizing successful events, the parties agreed and believed by pooling their resources the parties could produce events of larger scale. At all times it was the intent of the parties that Plaintiff and Defendant So Ill would be the owners of the joint venture; having equal power to control and manage the joint venture, and direct each other with roles and responsibilities. It was understood that each party would provide valuable resources to the joint venture whether it be financial capital, personal services, or in the creative.  It was further understood that certain expenses would be declared by the Defendant So Ill since Defendant So Ill already had a tax identification number.

20.     The parties agreed that this joint venture would be named, branded, and marketed under the name "Parking Garage Party" and all resulting intellectual property and business assets would be co-owned by Plaintiff and Defendant So Ill.

21.     The first Parking Garage Party event was held on June 2016.

22.     Prior to the initial Parking Garage Party event, the parties held repeated meetings discussing the Parking Garage Party joint venture, its event and organization, and assigned each other with roles and responsibilities.

23.     As early as February 4, 2016, Defendant Seaman began declaring Parking Garage Party a joint venture between Plaintiff and Defendant So Ill. *See* Exhibit 4.

24. Indeed, Plaintiff was involved in every aspect of its organization and production including, *inter alia*, creating materials for the event and contacting interested parties, sponsors, and vendors.

25. As early as February 2016, Plaintiff was also in charge of attaining the necessary permits and local government approvals for the Parking Garage Party initial show. *See* Exhibit 5. Specifically, Plaintiff alone attended the initial meetings with the City of Elgin to attain the necessary licenses for the Parking Garage Party events.

26. Plaintiff was also involved in the creation of the Parking Garage Party name and logo, and its presentation for marketing materials. *See* Exhibit 6.

27. Plaintiff and Defendants jointly agreed on ticket sales and agreed on which third parties would be able to sponsor the event. *See* Exhibit 7.

28. The parties shared expenses for Parking Garage Party equally. *See* Exhibit 8.

29. Plaintiff and Defendants worked together to promote the event on various social media platforms. *See* Exhibit 9. Plaintiff proposed creating new social media channels for the Parking Garage Party joint venture and events. *See* Exhibit 10.

30. The Plaintiff and Defendants discussed various avenues to build further revenue for the Parking Garage Party joint venture. *See* Exhibit 11.

31. The parties mutually agreed on the amount of merchandise to order for the Parking Garage Party events. *See* Exhibit 12.

32. The Plaintiff and Defendants discussed and organized the Parking Garage Party event staff. *See* Exhibit 13.

33. At all relevant times the parties kept each other informed on total revenues and directed each other with additional tasks that would need to be completed for the Parking Garage Party joint venture.

34. When confirming registrations with sponsors of the Parking Garage Party event, Defendants represented Parking Garage Party as a joint venture between Plaintiff and Defendant So Ill by stating "Parking Garage Party presented by So ill x Stance Down Low!" and signed the notice as "Registration Team Parking Garage Party 2016 So Ill Apparel and Decals Stance Down Low." Further, when reviewing this circular, Defendant Seamen and Defendant Vasilakos took no issue with the presentation and affirmed the representation *See* Exhibit 14.

35. The Parking Garage Party "Event Proposal" also presented Parking Garage Party as a joint venture between Plaintiff and Defendant So Ill. *See* Exhibit 15.

36. Upon completion of the initial Parking Garage Party event the parties met to perform a complete accounting of all profits, losses, and all remaining unsold merchandise. *See* Exhibit 16.

37. The initial Parking Garage Party turned a profit and Plaintiff and Defendant So Ill split the profits fifty-fifty (50/50).

38. Upon competition of the initial Parking Garage Party event the City of Elgin had several complaints with the event and considered disallowing the Parking Garage Party event to continue in the future. However, Plaintiff was successfully able to lobby the City of Elgin on

behalf of the joint venture, to permit the Parking Garage Party events to take place in subsequent years.

39.     Upon completion of the initial Parking Garage Party event, the parties agreed to continue producing future events together under the Parking Garage Party name and brand, and planned on expanding into different states and communities. *See* Exhibit 17.

40.     The parties went on to jointly promote and organize a subsequent Parking Garage Party event in 2017 where each party substantially performed the same roles they had in the initial Parking Garage Party event.

41.     The parties continued to market and promote the Parking Garage Party brand and its associated events as a joint venture between Plaintiff and Defendant So Ill. *See* Exhibit 18.

42.     For the 2017 Parking Garage Party the parties jointly submitted a permit application with the City of Elgin and listed both Plaintiff and Defendant So Ill as the event's sponsor. *See* Exhibit 19.

43.     Following the 2017 Parking Garage Party event the parties went on to conduct a full accounting of all profits, losses, and catalogued all remaining unsold merchandise.

44.     Sometime near January 17, 2018, the parties met and discussed their desire to attain federal trademark protection in the Parking Garage Party brand on behalf of the joint venture, listing Plaintiff and Defendant So Ill as the owners of the trademark. *See* Exhibit 20. At this meeting, Defendants did not reveal to Plaintiff that a trademark application to the PARKING GARAGE PARTY name and brand had already been filed by the Defendants which omitted Plaintiff.

45.     The parties went on to jointly plan and organize a 2018 Parking Garage Party event in Elgin, Illinois, and Milwaukee, Wisconsin, just as they had with the previous events, and discussed expanding into other states such as Florida. *See* Exhibit 21.

46.     The parties jointly submitted a request to the City of Elgin for the Parking Garage Party event and listed Plaintiff as the event's primary contact and continued to present Parking Garage Party as a joint venture. *See* Exhibit 22.

47.     The marketing materials for the Parking Garage Party events continued to present and promote the events as a joint venture between the Plaintiff and the Defendant So Ill. *See* Exhibit 23.

48.     In a "Resident Letter" to the City of Elgin, Plaintiff was listed as an owner of the Parking Garage Party brand and event. *See* Exhibit 24.

49.     In early 2019 the parties met once again to discuss Parking Garage Party matters and future Parking Garage Party events in 2019. Just as with the previous years, the parties mutually organized and promoted the Parking Garage Party events and held roles that were substantially similar to previous years.

*Defendants Breach of the Joint Venture Agreement*

50.     In July 2019 the parties met once more to discuss the Parking Garage Party joint venture and its future Parking Garage Party events and came to an understanding that the parties would continue as they had previously.

51.     On or around July 12, 2019, Defendant Seaman began discussions with a third-party event organizer named "Trinium" about the possibility of hosting an event with Parking Garage Party. Plaintiff was involved in the discussion regarding whether to collaborate with this third party. *See* Exhibit 25.

52.     Thereafter and without further notice, the Defendants removed Plaintiff's access from all Parking Garage Party accounts, Parking Garage Party proprietary materials, and denied him further involvement in the Parking Garage Party joint venture and events.

53.     Plaintiff notified Defendants that their actions were in breach of the Parking Garage Party joint venture and that Plaintiff was entitled to certain rights as the co-owner of the Parking Garage Party joint venture. Plaintiff demanded access and continued involvement with any negotiations involving the Parking Garage Party joint venture.

54.     Despite Plaintiff's demands, the Defendants continued to block Plaintiff from accessing all Parking Garage Party accounts and did not include Plaintiff in joint venture communications.

55.     Thereafter, Plaintiff was continually met with empty and false promises concerning meetings to discuss the joint venture and future endeavors.

56.     The Defendants went on to host and organize a Parking Garage Party in Milwaukee Wisconsin in September 2019, and also a Parking Garage Party in Elgin, Illinois October 2019 without Plaintiff's approval or involvement.

57.     The Defendants went on to host and organize a Parking Garage Party in November 2, 2019. Defendants did so without the approval or inclusion of Plaintiff.

58.     Following this last event, and in light of the pandemic, Plaintiff had presumed the defendants had ceased all continuation of the Parking Garage Party joint venture. During this time Plaintiff had paused his efforts on retaining access to all Parking Garage Party accounts, and attaining further inclusion on all other Parking Garage Party matters.

59.     Following the pandemic the Defendants continued operation of the Parking Garage Party joint venture without the approval, inclusion of, or notice to Plaintiff.

60.     The Defendants went on to host and organize a Parking Garage Party on July 10, 2021. The Defendants did so without the approval or inclusion of Plaintiff.

61.     The Defendants organized and hosted an additional Parking Garage Party on August 27, 2022. Defendants have done so without the approval or inclusion of Plaintiff.

62.     Prior to this most recent event, Plaintiff had been in communication with Defendants seeking *inter alia* access to the joint venture's continued operation and its associated accounts.

63.     At all relevant times, Defendants have unjustifiably deprived Plaintiff of all ownership rights and powers in regard to the Parking Garage Party joint venture.

64.     Defendants have made material decisions in regard to the continued operation of the Parking Garage Party joint venture without consulting or involving the Plaintiff.

65.     Defendants have unjustifiably deprived Plaintiff of all ability to operate and run the Parking Garage Party joint venture.

66.     Defendants have unjustifiably deprived Plaintiff of the ability to control the brand image and goodwill associated with the Parking Garage Party joint venture.

67.     As a result of Defendants' collective conduct, Defendants' have caused direct harm to the Plaintiff and the Parking Garage Party joint venture.

68.     To date and despite over half of year of continued discussions between the parties, Defendants continue to deny Plaintiff all access to the Parking Garage Party joint venture, intellectual property, and all other proprietary materials.

*Defendants' Fraud on the USPTO and Violation of Plaintiff's Trademarks.*

69.     On August 29, 2017, Defendants filed a trademark application for the PARKING GARAGE PARTY trademark and despite Plaintiff's valid ownership to the name and mark, Defendants deliberately excluded Plaintiff as an owner of the trademark. Defendants did not inform Plaintiff of this application prior to or at the time of its filing. Defendants listed the PARKING GARAGE PARTY trademark's owner solely as Defendant So Ill.

70.     Further, illustrating the Defendants' fraud, the "specimen of use" for the PARKING GARAGE PARTY trademark application submitted by the Defendants included Plaintiff's "Stance Down Low" brand and business predominately, and states "Stay Ill x **SDL** presents: Parking Garage Party 2017." *See* Exhibit 26.

71.     Sometime near January 17, 2018, the parties discussed a PARKING GARAGE PARTY trademark application and Defendant Vasilakos suggested to include Plaintiff's name as the owner of the trademark to further memorize Plaintiff as an owner of the PARKING

GARAGE PARTY name and mark. *See* Exhibit 20. Plaintiff was not informed that at the time the Defendants had already submitted this application to his exclusion.

72.     Despite this conversation Defendants did not amend the PARKING GARAGE PARTY trademark application to name all the owners of the mark. Rather, the Defendants choose to allow the PARKING GARAGE PARTY trademark to achieve registration without the correction. *See* Exhibit 27.

73.     To date, and despite Plaintiff's notice and demand, Defendants have yet to correct this error.

### *Defendants' Fraudulently Register Plaintiff's STANCE DOWN LOW trademark*

74.     Furthermore, and perhaps most egregiously, Defendants filed a subsequent trademark application for Plaintiff's STANCE DOWN LOW trademark on October 6, 2019.

75.     Notably, this filing date was shortly after the Defendants denied Plaintiff of all access to the Parking Garage Party joint venture.

76.     For this filing, the Defendants named the owner of the STANCE DOWN LOW trademark as Defendant So Ill and submitted multiple specimens belonging to the Plaintiff, namely, a specimen of Plaintiff's Website and pictures of Plaintiff's marketing materials.

77.     For this filing the Defendants listed the first use in commerce date as August 3, 2019, but their specimen submitted clearly stated STANCE DOWN LOW was established in 2011.

78.     This fraudulently procured trademark application achieved registration on November 17, 2020.

79.     Plaintiff never authorized the Defendants to file this application on his behalf and never conferred ownership in the STANCE DOWN LOW name and mark to the Defendants.

80.     On opinion and belief Defendants have used the STANCE DOWN LOW trademark with the intent to extort further funds from the Plaintiff.

81.     To date, and despite Plaintiff's notice and demands, the Defendants have not abandoned this fraudulently procured STANCE DOWN LOW trademark registration.

82.     Plaintiff has invested substantial time, effort, and money promoting, marketing, advertising, and building up Plaintiff's Stance Marks.

83.     As a result of the continuous and considerable effort and investment, Plaintiff's Stance Marks have become, through public acceptance and recognition, an asset of substantial value symbolizing Plaintiff's quality of services and goodwill.

84.     Plaintiff has never authorized, licensed, or otherwise permitted Defendants to use Plaintiff's Stance Marks or any confusingly similar mark.

85.     Defendants use of Plaintiff's Stance Marks and are likely to cause and perhaps have already caused consumer confusion in the marketplace.

86.     Without court intervention, the likelihood of confusion will only escalate, Plaintiff's brand and goodwill will only be further diminished, Plaintiff will continue to lose control of its reputation, and Plaintiff will suffer escalating damages.

## COUNT I

## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C § 1125(a))

87.     Plaintiff realleges and incorporates by reference paragraphs 1-86 as though fully alleged herein.

88.     Plaintiff is the owner of valid and subsisting federal trademark rights in the Stance Marks for, *inter alia*, organizing community festivals featuring primarily car shows and music.

89.     Plaintiff has used the Stance Marks in commerce as early as 2011 and as a result of his widespread, continuous, and exclusive use of the Stance Marks to identify his services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory rights in the Stance Marks.

90.     Plaintiff's Stance Marks are distinctive to both the consuming public and Plaintiff's trade.

91.     Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting its services under the Stance Marks.

92.     Upon information and belief, Defendants have been engaged in the advertising, promotion, offering for sale, and sale of their services using a mark identical to the Stance Marks throughout the Midwest.

93.     On June 30, 2022, Plaintiff's counsel sent a cease and desist letter and, after reasonable inquiry, has no evidence that Defendants have complied with the demands set forth in Plaintiff's counsels' cease and desist letter.

94.     Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Defendants' services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' services originate from, are associated or affiliated with, or otherwise originate or are authorized by the Plaintiff.

95.     Defendants' use in commerce of the Stance Marks, whether combined or used separately, in connection with events for car enthusiasts and related products and services are likely to cause confusion, or to cause mistake or to deceive consumers and mislead the relevant public as to the source of Defendants' products or services, as to a false affiliation, connection, or association between Defendants and its services and Plaintiff and its services.

96.     Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on the good of Plaintiff's Stance Marks, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's services to the Defendant.

97.     Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

98.     Plaintiff has been damaged as a direct and proximate result of the acts of the Defendants and those acting in concert with the Defendants in amount in excess of $75,000 to be determined at trial.

99.     Defendants' conduct has caused great and irreparable injury to Plaintiff and, unless such conduct is enjoined, will continue to cause, and Plaintiff will continue to suffer, great and irreparable injury for which Plaintiff has no adequate remedy at law.

## COUNT II

## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

100.    Plaintiff realleges and incorporates by reference paragraphs 1-99 as though fully alleged herein.

101.    Defendant has passed off and continues to pass off its services as Plaintiff's services by knowingly and intentionally using a trademark identical to the Stance Marks in connection with near identical services without Plaintiff's authorization.

102.    The relevant public has believed, and is likely to increasingly believe in the future, that Defendant's services originate with, are licensed by, are sponsored by, are connected with, or otherwise falsely associated with Plaintiff.

103.    Defendants' unauthorized use of the infringing mark falsely represents Defendants as being legitimately connected with Plaintiff and places Plaintiff's reputation beyond Plaintiff's control.

104.    Defendants' infringing conduct was deliberate, intentional, willful, and with knowledge of Plaintiff's superior rights.

105.    Defendants' willful tortious conduct has proximately and in fact caused Plaintiff damages, including consumer confusion, sales diversion, lost goodwill, loss of advertising investment, and loss of control of Plaintiff's reputation.

106.    Defendants' unlawful and willful conduct will continue to irreparably damage Plaintiff unless enjoined by this Court.

107.    Plaintiff has been damaged as a direct and proximate result of the acts of the Defendants and those acting in concert with the Defendants in amount in excess of $75,000 to be determined at trial.

108.    Defendants' conduct has caused great and irreparable injury to Plaintiff and, unless such conduct is enjoined, will continue to cause, and Plaintiff will continue to suffer, great and irreparable injury for which Plaintiff has no adequate remedy at law.

## COUNT III

## FALSE REGISTRATION (15 U.S.C § 1120)

109.    Plaintiff realleges and incorporates by reference paragraphs 1-108 as though fully alleged herein.

110.    Prior to applying for the federal trademark registration for the STANCE DOWN LOW (U.S. Reg. No. 6198277) trademark, Defendants were aware of Plaintiff and his interstate commerce use of the Stance Marks and logos for, *inter alia*, organizing community festivals featuring primarily car shows and music.

111.    Prior to applying for the federal trademark registration for the PARKING GARAGE PARTY (U.S. Reg. No. 5557296) trademark, Defendants were aware of Plaintiff and his valid and subsisting ownership rights in the Parking Garage Party name and mark.

112.    On information and belief, despite this knowledge, Defendants knowingly falsely represented under oath in its federal trademark application before the USPTO that "after an inquiry reasonable under the circumstances," they did not know or believed any other person had

"the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

113.    As a result of Defendants' deliberately and materially false and misleading representations, the USPTO ultimately registered and Defendants false procured both the STANCE DOWN LOW and the PARKING GARAGE PARTY trademarks.

114.    Most importantly, Defendants' fraudulently procured registrations have caused Plaintiff damages, including loss of goodwill and distinction in the market, increased difficulty in enforcing its mark and rights, the inability to register Plaintiff's own trademark applications, and overall consumer confusion of ownership.

**COUNT IV**

**VIOLATION OF THE UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510)**

115.    Plaintiff realleges and incorporates by reference paragraphs 1-114 as though fully alleged herein.

116.    Through its use of a name and mark identical to the Stance Marks for substantially similar services, Defendant has passed off and continues to pass off its services as Plaintiff's services and has caused and continues to cause a likelihood of confusion and misunderstanding as to the source, sponsorship, approval, affiliation, connection, or association of its services. 815 ILCS § 510/2(a)(1)-(3), (12)

117.    Defendants' knowingly tortious conduct proximately, and in fact caused Illinois consumers and Plaintiff, damages through consumer confusion and harm to reputation, and Defendant will continue to do so unless enjoined by this Court.

## COUNT V

## VIOLATION FO THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS § 515/1)

118.    Plaintiff realleges and incorporates by reference paragraphs 1-117 as though fully alleged herein.

119.    Plaintiff has valid and protectable rights in the Stance Marks.

120.    Plaintiff's mark is inherently distinctive or has otherwise acquired distinctiveness.

121.    Defendants' unauthorized use of the Stance Marks have caused and continue to cause a likelihood of confusion and misunderstanding as to the source, sponsorship, approval, affiliation, connection, or association of its services, thereby constituting a violation of the Consumer Fraud and Deceptive Business Practices Act.

122.    As a direct and proximate result of the above-mentioned acts, practices, and conduct, Plaintiff has been and is likely to be substantially damaged in his business, including his reputation and goodwill, for which Plaintiff has no adequate remedy at law.

123.    Unless enjoined by this Court, Defendants will continue to engage in deceptive business practices to the Plaintiff's irreparable injury.

124.    The threat of future injury to the general public and to Plaintiff's business, identity, goodwill and reputation necessitates the award of injunctive relief to prevent the Defendants' continued wrongful and false acts.

## COUNT VI

## VIOLATION OF ILLINOIS UNFAIR COMPETITION (ILLINOIS COMMON LAW)

125.    Plaintiff realleges and incorporates by reference paragraphs 1-124 as though fully alleged herein.

126.     Defendants' knowingly and unauthorized use of the Stance Marks in connection with their services have caused and will continue to cause consumer confusion as to the source of the services at issues, as well as the sponsorship and/or affiliation of Plaintiff to those services.

127.     As an actual and proximate result of Defendants' unfair competition, Plaintiff has suffered extensive damages, including diversion of sales, loss of goodwill and control  of over his reputation, and related damages.

128.     Defendants' unfair competition has been willful and intentional.

## COUNT VII

## CONVERSION (Brought Individually)

129.     Plaintiff realleges and incorporates by reference paragraphs 1-128 as though fully alleged herein.

130.     At all relevant times from the creation of the Parking Garage Party joint venture to the present, Plaintiff was a lawful owner and had an unconditional and immediate right of possession of 50% of all ownership interest, intellectual property, other proprietary materials, in and to the Parking Garage Party joint venture.

131.     Defendants' actions in wrongfully taking and retaining interest and control of the Parking Garage Party joint venture, failing to confer access to all Parking Garage Party accounts, intellectual property, and all other proprietary materials to Plaintiff, and failure to properly provide an accounting to Plaintiff, were intentional, malicious and constitute a wrongful and material interference with Plaintiff's right to possession and ownership of the Parking Garage Party joint venture, and the rights attendant thereto, which interference is serious and material

enough to warrant Defendants' payment of Plaintiff's deprived property value and confer access to the Parking Garage Party joint venture.

132.    At no time did Plaintiff transfer possession or authorize transfer of possession of any of his ownership interest to Defendants or any other individual.

133.    As a result of the Defendants' conduct, Plaintiff has been materially damaged in the amount of at least $100,000.

**COUNT VIII**
**BREACH OF FIDUCIARY DUTY (Brought Individually)**

134.    Plaintiff realleges and incorporates by reference paragraphs 1-133 as though fully alleged herein.

135.    Plaintiff, individually, as a joint venturer of the Parking Garage Party joint venture, brings this action on his own behalf to redress the multiple breaches of fiduciary duty committed by Defendants which harmed, and continue to harm, Plaintiff and to recover damages against Defendants for his own benefit.

136.    Defendants owe Plaintiff a fiduciary duty to act at all times with the utmost good faith, loyalty, honestly, and fair dealing, to avoid self-dealing, conflicts of interest, and acting for the personal interest of themselves, their families, and/or friend to Plaintiff's detriment.

137.    Defendants have breached their fiduciary duty to Plaintiff by depriving Plaintiff of his right to control the Parking Garage Party joint venture and meaningfully engage in the joint venture business decision making process.

138.    Defendants have breached their fiduciary duty to Plaintiff by depriving Plaintiff of his right to share in loses and revenues from the Parking Garage Party joint venture.

139.     Defendants have breached their fiduciary duty to Plaintiff by depriving Plaintiff the opportunity to inspect the books and records of the Parking Garage Party joint venture.

140.     Defendants have breached their fiduciary duties to Plaintiff by failing to keep corporate records, hold and include Plaintiff in required meetings, and properly account for all loses and revenue coming into the Parking Garage Party joint venture.

141.     On information and belief, Defendants have breached their fiduciary duties to Plaintiff by comingling monies received by the Parking Garage Party joint venture for its services with their own personal funds.

142.     Defendants' conduct involves knowingly and culpable violation of their obligations as joint ventures of the Parking Garage Party business, the absence of good faith on their part, and a reckless disregard for their duties to the joint venture and Plaintiff.

143.     Defendants were aware or should have been aware that their conduct posed a risk of serious injury to Plaintiff.

144.     As a direct and proximate result of Defendants' conscious failure to perform their fiduciary obligation, Plaintiff has been and will continually to be damaged if this Court does not enjoin the Defendants.

## COUNT IX

### WRIT OF MANDAMUS (Brought Individually)

145.     Plaintiff realleges and incorporates by reference paragraphs 1-143 as though fully alleged herein.

146.    At all times Plaintiff was a joint venturer, akin to a partner in a partnership, in the Parking Garage Party joint venture.

147.    805 ILCS 206/401(b) provides that each joint venturer "is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits."

148.    805 ILCS 206/401(f) provides that each joint venturer "has equal rights in the management and conduct of the partnership business.

149.    805 ILCS 206/401(g) provides that each joint venturer "may use or possess partnership property."

150.    805 ILCS 206/403(b) provides that each joint venturer "shall provide partners and their agents and attorneys access to its books and records."

151.    Plaintiff requested access to the Parking Garage Party joint venture specifically in writing and his request was for a proper purpose, which was to retain his property and access to the Parking Garage Party intellectual property and all other proprietary materials and to calculate his rightful share of profits and loses as a joint venturer or the Parking Garage Party joint venture.

152.    Despite proper demand, Defendants failed to adequately respond to the request.

153.    Plaintiff is entitled to a writ of mandamus, or similar remedy, for Defendants' breach of the parties' joint venture, to compel the Defendants to reinstate Plaintiff with access to all Parking Garage Party accounts, intellectual property, proprietary materials, and all decision-

making power and authority proportional to Plaintiff's ownership interest, and all other rights attributable to Plaintiff as a joint venturer of the Parking Garage Party joint venture. (805 ILCS 206/405).

154.    Plaintiff has been damaged as a direct and proximate result of the acts of Defendants and those acting in concert with Defendants in an amount in excess of $100,000 to be determined at trial.

155.    Defendants' conduct has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, Defendants will continue and Plaintiff will continue to suffer great and irreparable injury for which Plaintiff has no adequate remedy at law.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a jury trial of all issues that may be tried to a jury in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for an Order and Judgment:

A. Enjoining Defendants, their agents, representatives, employees, assigns, and all person acting in concert or privity with it, from:

    a. Using in any manner infringing trade dress, or any name, mark, or trade dress that incorporates the Stance Marks or a confusingly similar mark to the Stance Marks.

    b. Using or displaying the infringing marks, marks identical or substantially similar to the Stance Marks, on any websites, products, or promotional materials in any false, misleading, and/or deceptive manner;

    c. Acting in any manner likely to cause confusion or mistake in the minds of vendors, members of the public, or prospective consumers as to the source of the products or services offered for sale, distributed, or sold;

      d.   Acting in any manner likely to deceive members of the public, or prospective customers, into believing that there is some false connection, association, or affiliation between Plaintiff and Defendants beyond the Parking Garage Party joint venture;

      e.   Making any representations, express or implied, that Plaintiff is affiliated with, authorizes, endorses, sponsors, or approves of Defendants' services.

      f.   Continuing to use the Parking Garage Party name and mark without the express approval of the Plaintiff.

      g.   Continuing to organize and host Parking Garage Party events at the exclusion of Plaintiff.

B.  Order Defendants to recall all products currently in the market bearing infringing trademarks;

C.  Ordering Defendants to deliver for destruction, all products, labels, marketing and promotional materials, or any or other items in their possession, custody, or control of Defendants or its agents bearing infringing trademarks that are confusingly similar to the Stance marks;

D.  Ordering Defendants to file with this Court and serve upon Plaintiff within thirty (30) days after entry of an injunction, a written report under oath describing in detail the manner and form in which Defendants have complied with the injunction;

E.  Order Defendants to provide a full accounting of profits and losses derived from the Parking Garage Party joint venture and services bearing the infringing trademarks and ordering disgorgement of those profits.

F.  Enjoin Defendants from doing or performing the deceptive practices complained of;

G.  Order a writ of mandamus or similar award,

H.  Order an accounting for the Parking Garage Party losses and revenue from 2019 to the present.

I.  Awarding actual damages to be determined at hearing or trial;

J.  Awarding treble damages and pre- and post-judgment interest pursuant to 15 U.S.C. § 1117;

K.  Awarding reasonable attorney fees and costs under 15 U.S.C § 1117 and Illinois Law; and

L.  Granting Plaintiff all such further relief as the Court deems just and proper.

Respectfully submitted this January 25, 2023

Respectfully submitted,

/s/ Daliah Saper_____
Daliah Saper, Ill. No. 6283932
ds@saperlaw.com
Brandon Campillo, No. 6338787
bcampillo@saperlaw.com
Saper Law Offices
*Attorneys for Plaintiff*
505 N LaSalle, Suite 350
Chicago, IL 60646
312-527-4100